Reich et ux. *v.* Reading.

512

Argued September 9, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*Paul T. Essig, Sr.*, with him *Carl F. Mogel* and *Balmer, Mogel, Speidel & Roland*, for appellants.

*Peter F. Cianci*, First Assistant City Solicitor, with him *David J. Batdorf*, City Solicitor, for appellee.

PER CURIAM OPINION, December 8, 1971:

This appeal is from an order and final decree of the Court of Common Pleas of Berks County dismissing exceptions to an adjudication by the Chancellor, ESHELMAN, J., restraining and enjoining the defendants, or anyone acting in their behalf, from maintaining and operating at premises 161 Clymer Street, Reading, Pennsylvania, an insurance office and office for the preparation of income tax returns or any allied

form of activity, or allowing the premises to be used for such purposes.

After reviewing the record and researching the matter, we adopt the well-reasoned adjudication of Judge W. Richard Eshelman,[1] following:

The City of Reading, plaintiff, filed a complaint requesting that Harry W. Reich and Anna E. Reich, his wife, defendants, be restrained from using their premises, 161 Clymer Street, Reading, Pennsylvania, for conducting an insurance business in violation of the City of Reading Zoning Ordinance. An answer was filed and a hearing was held.

The issues are (1) whether defendants were obliged to obtain a permit to change the use of a portion of the premises from residential to that of an insurance office, and (2) whether such insurance office comes within the definition of "Professional Offices" as one of the permitted principal uses in a Residential Multiple-Family Zoning District.

The facts are that defendants are owners of premises 161 Clymer Street, Reading, Berks County, Pennsylvania, having acquired the premises by deed dated

---

[1] *See also Recht v. Graves*, 257 App. Div. 889, 12 N.Y.S. 2d 158 (1939), in which it was held that life insurance agents were engaged in business and not in the practice of a profession; *Otis v. Graves*, 259 App. Div. 957, 20 N.Y.S. 2d 426 (1940), in which petitioners, engaged in the activity of insurance brokerage, were held not exempt from the unincorporated business tax because they did not practice a profession within the meaning of the Tax Law; *In Re Grant*, N.Y.L.J., October 21, 1954, p. 13, where in effect, the court held that the business of an insurance broker did not come within "professional use"; *McVey v. Reichley*, 152 N.E. 2d 321 (Oh. App. 1957), where the use of a structure in the rear of a residence in a residential zone as an insurance agency office was held not a use for a purpose "customarily incidental" to the principal building or a customarily incidental "home occupation within a dwelling" within the zoning regulations; Wright, *What is a "Profession?"*, 29 Canadian B. Rev. 748 (1951); Klass, *What is a Profession?*, 4 Canadian B.J. 466 (1961).

November 30, 1965, and recorded in the Office of the Recorder of Deeds of Berks County in Deed Book Volume 1478, page 451; that said premises are subject to the provisions of the Reading City Zoning Ordinance enacted February 6, 1957, being located in a zoning district classified Residential Multiple-Family wherein one of the permitted principal uses under Section 701.1 is "Professional Offices"; that defendant Harry W. Reich made application for a zoning permit to install a partition in the two-story garage building on said premises for use as an insurance office, which application was denied October 3, 1968 by the Zoning Administrator, the appeal therefrom was denied November 27, 1968 by the Zoning Board of Adjustment (Exhibit 6), and the defendants were notified thereof; that defendants took no appeal from the said denial of application by the Zoning Board of Adjustment, but on or about February 1, 1970, without obtaining a zoning permit, defendants began to use the basement of the three-story brick building on said premises for an insurance office and for preparation of income tax returns, and advertised this fact in a letter sent to policyholders (Exhibit 1), said building theretofore having been used for residential purposes only; that the remainder of said three-story building consists of nine apartments of which a first floor apartment has been occupied for living quarters by defendants since February 14, 1970; that city inspections made in March, June and September, 1970, disclosed that the basement insurance office area consisted of a room approximately 18' x 33' encompassing 25 to 30 percent of the basement area, plus a storage area, and in said office were located a counter, four desks, office equipment, and on one or more of said inspections various persons including three female employees, defendant Harry W. Reich and another man were present in said office; that at the time of said three inspections a sign was located

outdoors on said premises containing the name "Harry W. Reich", and on the March inspection a second sign was located outdoors containing the word "Insurance"; that premises at 161 Clymer Street contain a driveway area, and less than 25 percent of the premises area consists of buildings; that defendant Harry W. Reich has been a Pennsylvania licensed insurance agent for 17 years for fire and casualty and allied lines and life insurance, and is also a Pennsylvania licensed insurance broker.

It is apparent that when the Zoning Administrator and the Zoning Board of Adjustment refused to issue a permit to defendants to partition off a portion of the two-story garage building for use as an insurance office, defendants, without obtaining a permit, located the insurance office in the basement of the three-story brick building theretofore used for residential purposes, and which insurance office has been used as such since about February 1, 1970, and defendants have resided since February 14, 1970 on the first floor of said three-story building in one of the nine apartments located therein. This involved a change in use by defendants of a portion of the basement area from that of residential to that of an insurance office. Does the ordinance require that a permit be obtained for such change of use? The first sentence of Section 1805.1 of the ordinance provides as follows: "1805.1—When Permit is Required.—It shall be unlawful to excavate for or store material, machinery or equipment on a lot in connection with the erection, construction, placement, reconstruction, alteration, repair, extension, replacement, restoration or conversion of any structure, building, and/or sign (except a sign under twenty (20) square feet) or change the use, area of use, or percentage of use or extend or displace the use of any structure, building, sign, and/or land or portion thereof in the city, without first filing an application with the

Office of the Zoning Adminstrator in writing and obtaining the required permit therefor. . . ." Defendants contend that the first clause of the quoted sentence, namely, "It shall be unlawful to excavate for or store material, machinery or equipment on a lot in connection with . . ." applies to and modifies the entire balance of the quoted sentence, and since no excavation or storing occurred on defendants' premises no permit was required. Plaintiff contends that the word "or" in the clause "or change the use" is in the disjunctive and therefore a permit was required. Although the draftsmanship is poor, the only reasonable and intelligent construction of the sentence is that "or" is used in the disjunctive, and that a permit is therefore required not only for excavating for or storing material or equipment in connection with construction or repair of a structure but also for any change in use of any structure or portion thereof.

Defendants also contend that their insurance office comes within the definition of "Professional Offices" as a permitted principal use under Section 701.1 in a Residential Multiple-Family Zoning District for which no permit is required.

It is a principle of statutory construction that in construing a legislative enactment the court must ascertain and give effect to the legislative intention as expressed in the language employed: *Bonasi v. Haverford Township Board of Adjustment,* 382 Pa. 307 [115 A. 2d 225 (1955)]. A municipality may designate by definition any meaning it wishes to be accorded particular words or phrases in a given ordinance, even though the meaning differs from that ordinarily conveyed by the term or phrase: *Sterling v. Philadelphia,* 378 Pa. 538 [106 A. 2d 793 (1954)]. However, in the absence of a specific definition given in an ordinance, words and phrases must be construed according to their common and approved usage: Act of May 28, 1937, P. L.

1019, §33, 46 P.S. 533. Also, in construing a zoning ordinance, there is an additional rule of construction that words of restriction upon the use of property, being in derogation of common law, must receive a strict construction in favor of the property owner, and words of allowance receive a broad construction: *Fidler v. Zoning Board of Adjustment,* 408 Pa. 260 [182 A. 2d 692 (1962)]; *Gilden Appeal,* 406 Pa. 484 [178 A. 2d 562 (1962)].

Unfortunately the ordinance in question does not define "Professional Offices" so that the legislative intent must be gathered from the ordinance as a whole, assigning the usual and generally accepted meaning to the words or phrases employed.

A careful examination of the statute discloses that "Professional Offices" is set forth as one of the permitted principal uses in all four districts classified as residential, i.e., limited one family, one family, two family, and multiple-family. In addition to governmental and public utility installations for servicing the area, all of the other permitted principal uses in these districts are private residential uses of varying types of density or are primarily public, quasi-public or private institutional or recreational uses, but no business or service establishments of any kind are set forth as permitted principal uses except that a funeral home is specifically permitted in a multiple-family district. By contrast, various additional principal uses are permitted in a Business Neighborhood Zoning District, including "business or professional office", retail business, service establishments, eating places, and automotive parking and service facilities. It is therefore apparent that except for professional offices and a funeral home, and governmental and public utility installations, the legislative intent is to permit only residential, institutonal and recreational uses in a multiple-family district.

Does defendants' insurance office qualify as a professional office? Webster's Third New International Dictionary, 1968 edition, defines "professional" as "engaged in one of the learned professions or in an occupation requiring a high level of training and proficiency", and defines "profession" as "a calling requiring specialized knowledge and often long and intensive preparation including instruction in skills and methods as well as in the scientific, historical, or scholarly principles underlying such skills and methods, maintaining by force of organization or concerted opinion high standards of achievement and conduct and committing its members to continued study and to a kind of work which has for its prime purpose the rendering of a public service." In *Howarth v. Gilman*, 365 Pa. 50 [73 A. 2d 655 (1950)], at pages 56-57 [73 A. 2d at 658], the Supreme Court stated: "For the word 'profession' connotes something more than mere skill in the performance of a task. It has been defined by the courts in numerous opinions, the most comprehensive of which may be found in *U. S. v. Laws*, 163 U.S. 258 [16 S. Ct. 998, 1001, 41 L. Ed. 151] and in Webster's New International Dictionary as: 'The occupation, if not purely commercial, mechanical, agricultural, or the like, to which one devotes oneself; a calling in which one professes to have acquired some special knowledge used by way either of instructing, guiding, or advising others or of serving them in [some] art'."

Defendant Harry W. Reich contends that because of the nature of the business conducted on the premises and particularly because he is licensed by the Commonwealth of Pennsylvania as an insurance agent and insurance broker, his occupation is that of a profession and his insurance office is a professional office within the terms of the ordinance. The applicable licensing Act of May 17, 1921, P. L. 789, §601, as amended, 40 P.S. 231, defines "agent" as ". . . an individual, copart-

nership or corporation, authorized in writing by a company, association, or exchange—(a) To solicit risks and collect premiums, and to issue or countersign policies in its behalf, or (b) To solicit risks and collect premiums in its behalf." In plain words, selling insurance, issuing policies, collecting premiums. Section 621, 40 P.S. 251, defines "insurance broker" as ". . . a person, copartnership, or corporation, not an officer or agent of the company, association, or exchange interested, who or which, for compensation, acts or aids in any manner in obtaining insurance for a person other than himself or itself." Sections 603 and 622, 40 P.S. 233, 252, also provides that before an agent or broker may be licensed he shall submit to interrogatories and his answers shall be vouched for by at least two agents or by officers of an insurance company that "applicant is of good business reputation, and has experience in underwriting, other than soliciting, and is worthy of a license."

The mere requirement of licensing does not of itself catagorize the occupation as that of a profession. There are various occupations required to be licensed by the Commonwealth but which have been held not to be professions, such as real estate brokers: *Ridley Township v. Pronesti,* 431 Pa. 34 [244 A. 2d 719 (1968)]; *Cummer v. Narberth Borough Board of Adjustment,* 59 D. & C. 686 [(1947)]; and beauticians: *Bonasi v. Haverford Township Board of Adjustment,* supra; *City of Reading v. Nigrelli,* 51 Berks Co. L. J. 89 [(1958)]. The occupation of funeral director has been held to be both a business and a profession, the various decisions being discussed at length in *Leaver v. Buckingham Township Board of Adjustment,* 10 D. & C. 2d 333 [(1956)].

Admittedly, an exact definition of "profession" or "professional" is very difficult. The concept is not necessarily limited to what were once considered the

only professions and are now frequently referred to as the "learned professions", namely, theology, medicine and law, but other [vocations] are considered to be professions, such as dentistry, teaching, architecture, and engineering, for which considerable educational preparation and continuing study are required. Important and specialized as the occupation of licensed insurance agent or broker may be, in determining the legislative intent based on consideration of the provisions of the ordinance in question, the common and accepted meanings of "profession" and "professional", the customary and usual concept of the occupation of insurance agent or broker and the applicable statutory requirements for licensure, the Chancellor concludes that the insurance office conducted by defendant Harry W. Reich is a business office rather than a professional office, and is therefore not a permitted use of the premises in question.

This appeal is dismissed and the decree of the lower court is affirmed.

Judge MANDERINO dissents.