## Ornstein Appeal

*John A. Van Luvanee,* for Ornstein.
*Stephen B. Harris,* for Zoning Board.

BIESTER, *J.*, April 22, 1981—This appeal is before the court pursuant to section 1006(3)(b) of

the Pennsylvania Municipalities Planning Code of July 31, 1968, P.L. 805, as amended, 53 P.S. § 11006(3)(b). Appellant Samuel Ornstein requested a zoning permit to construct on the subject property of which he is equitable owner an antique and special interest motor car museum. The zoning officer refused to grant the permit and Mr. Ornstein appealed to the Solebury Township Zoning Hearing Board. That board after receiving testimony sustained the action of the Solebury Township zoning officer and appellant has appealed to this court.

The property of which appellant is equitable owner is approximately 10.06 acres in size and is located between the Route 202 spur and the New Hope bypass. The area is zoned R-1 rural and the following uses are permitted in such an R-1 rural zone under the ordinance of Solebury Township:

"Section 301. Use Regulations. A building or other structure may be used, occupied, erected, built or altered, and a lot or tract of land may be used or occupied for any of the following purposes and no other:

1. A one-family dwelling or two-family dwelling and its accessory buildings and uses. For the purposes of this Ordinance, a trailer shall not be considered to be a dwelling.

2. A church, public library, public museum, fire station, township hall, public school, and its usual appurtenances, including dining facilities and dwelling quarters for students, faculty and employees. A public park or playground, a standard golf course and its usual appurtenances, and a private playground or other recreational area not conducted for profit.

3. Any form of agriculture or horticulture with the following exceptions and limitations: (a) Keep-

ing hogs except as a part of a general farming operation and on a property of less than fifteen (15) acres, and feeding hogs garbage or other refuse originating off the premises, shall be prohibited; (b) housing any fowl or livestock closer to a property line than thirty (30) feet, or closer to any existing dwelling on adjoining premises than one hundred (100) feet, shall be prohibited.

4. The storage, processing and sale of farm products, provided at least 50% of the farm products are produced on the premises where stored, processed or sold.

5. Signs which are in accordance with the provisions of Article XII of this Ordinance."

The ordinance specifically permits a "public museum" on land zoned R-1 rural. The Solebury Township Zoning Hearing Board found that the use which appellant sought to apply to the land included a certain amount of commercial activity which would entail uses not within the purview of a "public museum" use. Nowhere in the ordinance is the term "public museum" defined.

The court did not hear any additional evidence and therefore the scope of review is limited to whether the zoning hearing board has committed a manifest abuse of discretion or an error of law: Village 2 at New Hope, Inc. Appeals, 429 Pa. 626, 241 A. 2d 81 (1968); Barnhart v. Zoning Hearing Board of Nottingham Township, 49 Pa. Commonwealth Ct. 481, 411 A. 2d 1266 (1980).

The issue in this case comes down to what land uses may be permitted under a use characterized in the zoning ordinance as "public museum."

Mr. Ornstein is a businessman whose avocation is collecting special-interest automobiles constructed after the Second World War. He presently

owns 17 such motor vehicles. The record demonstrates that many of appellant's automobiles are indeed "one of a kind." For example appellant owns the McLaren prototype car. This car was an attempt by a prominent figure in automobile racing to introduce a car for eventual general production. The attempt failed and the prototype is indeed one of a kind. Also included in the Ornstein collection is a vehicle appellant describes as "the only surviving Jeep from World War II which participated in the North African campaign." This Jeep is fully equipped and armed (we assume without live ammunition) and if the photograph admitted into evidence is a true indication it is ready to roll either into military action or at least the next movie or television show devoted to the campaigns of the Second World War in the North African theatre.

The collection is not limited to sport vehicles or those as spartan as a World World II Jeep. The collection also includes a 1954 Silver Dawn Rolls Royce. In addition to the usual accoutrements one expects in a luxury automobile, this vehicle contains picnic tables, picnic equipment and a wash basin. Its armrests contain a cocktail shaker, glasses, thermos and a pipe rack. Some less sybaritic examples of appellant's collection include a 1957 Thunderbird, a 1957 Bentley Continental and a 1956 Mercedes Benz 300 SL Gull Wing Coupe. One need not be an automobile enthusiast to appreciate the obvious inherent value and scarcity and special interest of the vehicles described.

Mr. Ornstein's proposal is to build a barn-like, that is to say, to follow barn-like structure with hip roof and long sheds, wooden frame building approximately 270 feet long and 60 feet wide. The plans indicate a main museum hall approximately 60 feet long and 60 feet wide located in the center of the

building. This section is designed to accommodate a display of 18 to 20 automobiles. The bulk of these automobiles would come from Mr. Ornstein's collection with occasional additional showings of automobiles lent by other automobile enthusiasts.

The board did not dispute that the cars intended to be displayed are of special interest or value nor did the board find that it is not a legitimate function of a public museum to exhibit and care for these vehicles.

The board's resolution of the matter depended rather upon Mr. Ornstein's proposed activities in the non-display areas of the building.

The board's findings of fact outline the anticipated non-exhibit uses of the museum and they include the following:

"To make available to the public automotive tools which would be leased or rented to the public, the restoration and repair of antique cars, a library of maintenance books for the repair and maintenance of antique motor vehicles. Maintaining an inventory of automotive vehicle parts which could be for sale to the public, the merchandising and selling of badges, memorabilia and literature, the availability of a mail order service for automobile parts, the institution of a membership program ranging from .75 to $3.50 per person. Appellant plans to have car club outings meet on the premises prior to car club meets, an exchange center would be created for trade or sale of automotive parts, the appellant would arrange for classes to be held in the instruction of restoration of antique motor vehicles. . . ."

It is the above described activities to which the board attaches significance and which the board found to go beyond the use of a public museum.

In reviewing the board's findings of fact we must

review them against the testimony adduced at the hearing. Appellant testified that the museum would not be a place to buy and sell automobiles. Appellant did indicate that a car owned by someone else might be exhibited at the museum in exchange for the museam providing polishing of the vehicle and starting it once a month, but any such vehicle would not be placed on display for sale purposes.

Appellant also testified that a large portion of the building would be utilized for the restoration of cars. This restoration would only involve automobiles owned by appellant which had the potential to be exhibited. In fact Mr. Ornstein testified "if we can acquire cars which are of sufficient standards to be put on exhibit, it is our duty to restore them, to repair them, to do whatever is necessary to bring them to exhibition standards . . . there will be no commercial restoration and repairs." He testified that this work would be done on the premises and that parts would not be manufactured on the premises.

Mr. Ornstein also testified that restoration at the museum would have an educational function. He indicated that he envisioned setting aside a night a week for car club and museum members to observe restoration work. This would enable them to observe and utilize the proper procedures in working on their own automobiles.

The board's principal concern appears to be those activities which involve actual sale or lease of parts and/or equipment. As described by Mr. Ornstein these activities would be strictly limited in scope. For example, he envisions a "tool loan program" to be conducted by the museum. Apparently many automobile collectors require specially made tools. These tools are not readily available. The museum

would charge a fee plus a deposit for the loan of such tools. If the tool was not returned, the museum would purchase a new tool with the forfeited sum. The museum's function in regard to parts for collector automobiles would be two-fold. First, original component parts for collector automobiles (not reproduction parts) unavailable through normal channels would be available for sale at the museum. Mr. Ornstein testified that he would obtain these parts during his travels to car shows and otherwise. Collectors would be able to buy such parts primarily through mail-order. Mr. Ornstein testified that over-the-counter sales are not anticipated. Secondly, the museum would act as a reference service for individuals attempting to locate parts which the museum did not stock. A collector who possessed spare original parts would inform the museum staff and such information would be catalogued and made available to those seeking such parts. Both the actual selling of parts and the reference service would be done by word of mouth and no advertising would be used to promote these activities.

The issue then in this case is whether the activities proposed by appellant go beyond the activities permitted under the use of a public museum. A municipality in its ordinance may choose to define a particular word or phrase differently than its ordinary meaning: Sterling v. Philadelphia, 378 Pa. 538, 106 A. 2d 793 (1954); Jones v. Lower Makefield Township Zoning Hearing Board, 28 Bucks 14 (1975). However, in the absence of such specific definition words and phrases must be construed according to their common and approved usage: Reich v. Reading, 3 Pa. Commonwealth Ct. 511, 284 A. 2d 315 (1971);

Jones v. Lower Makefield Township Zoning Hearing Board, supra. In order to discover their common and approved usage reference is frequently made to a generally accepted dictionary: Barnhart v. Zoning Hearing Board of Nottingham Township, supra; Fidler v. Zoning Hearing Board of Adjustment, 408 Pa. 260, 182 A. 2d 692 (1962). In the instant case the zoning hearing board made reference to Webster's New Collegiate Dictionary and found the following definition of the word museum: "[A]n institution devoted to the procurement, care, study and display of objects of lasting interest or value; [also a place where objects are exhibited.]"

The board expressed concern that appellant will not confine the activities on the subject property to those set forth above, and further, that the facilities on the property would be of such scale that appellant could operate in violation of the zoning ordinance not a museum but instead a commercial car sales restoration and parts business. However, the board may not assume an owner will do other than that which he has testified he intends to do. Certainly the board and the court need not accept appellant's characterization of his proposed use. However, the precise commitments made by an applicant or in this instance by an appellant, uncontradicted by competent testimony, must be accepted. Future violations of the zoning ordinance if indeed they should occur must be dealt with by the appropriate authorities as they occur: Munchbach v. Hulmeville Borough Zoning Board of Adjustment, 12 Bucks 65 (1961); Ryan, Pennsylvania Zoning Law and Practice, section 9.4.14. As a corollary to this proposition and under the circumstances of this case when the question of whether appellant's proposed use fits within the zoning or-

dinance involves the manner in which certain activities are carried out, the board may require that appellant be kept to his word, both his word in his zoning application as well as his word testified under oath. The issue then in this case becomes whether the activities as proposed by appellant go beyond the activities permitted under the use public museum.

Appellant accepts the definition above. Of course the parties disagree as to whether it encompasses the proposed use. Although we acknowledge the validity of the definition we believe much may be gained by reviewing the context in which it was found. The entire dictionary reference is as follows:

"museum— 1, a scholar's library: STUDY (admitted to an audience in his (Charles Johnstone) 2a: an institution devoted to the procurement, care, and display of objects of lasting interest or value (British Museum) (American Museum of Natural History) b: a room, building, or locale where a collection of objects is put on exhibition (art) (science) (striking outdoor) two hundred acres of it—Bernard De Voto—EXHIBIT, COLLECTION . . . lore assembled in the foyer—Claudia Cassidy, 3: something that resembles a museum (the parlor was a . . . of Victorian bric-a-brac) (codes are maintained as no mere . . . of legal rules and principles . . ." Webster's Third New International Dictionary (1971).

It is extremely important to note that the full definition contains two examples of museums, namely the British Museum and the American Museum of Natural History. If one defines by example and uses the American Museum of Natural History as an exemplar of a public museum one

will find that a certain amount of commercial sales activity takes place in the museum. The American Museum of Natural History solicits public membership in a society, publishes a monthly magazine, maintains a sales office in the museum proper, sells reproductions of artifacts and art work shown in the museum or contained in the museum collection as well as calendars, post cards and various other materials associated with the museum collection or special shows. While all of those activities partake to a certain degree of commercial activity, all of them are also an extension of the museum's efforts to enable a greater number of persons to participate in the enjoyment of the museum activities and the appreciation of the museum's collection.

It is important to note that if a museum maintains such activities as we have described with respect to the American Museum of Natural History, such activities are collateral to and incidental to and a very small part of the total functioning of the museum.

Even in Bucks County a number of popular public museums in the county including one owned and operated by an agency of the county government maintain small shops at which memorabilia of the museum may be acquired by the purchasing public.

What is important to remember in each instance is the relative scale of the sales or rental activities in a public museum measured against the other study and exhibition functions of the museum. The hazard is that if the scale of commercial activity is too great it overwhelms the exhibition character of the use and distorts that exhibition character and

transforms what may be labeled a museum into in fact a commercial activity.

Among the factors which must be taken into account is the precedent setting of a particular use or activity in a municipality. We appreciate under those circumstances the apprehension of the board with respect to the activity proposed by appellant to operate a sales program of specialized parts and a clearing house for sales information.

We recognize the precedential hazard implied in permitting the conduct of any form of sales activity in old vehicle parts on land zoned as this land is. We therefore find that the board did not abuse its discretion in determining that such activity was beyond the uses contemplated in a "public museum." We therefore enter the following

### ORDER

And now, April 22, 1981, the appeal is sustained as to the following uses:

1. Exhibition of special interest vehicles.

2. Restoration and maintenance of appellant's vehicles for the purpose of exhibition in the museum.

3. Instruction in restoration of motor vehicles using appellant's vehicles only.

4. Leasing of specialized tools.

5. Sale of badges and small items of memorabilia.

6. Maintaining a library of maintenance literature for special interest vehicles.

7. A membership program.

8. Car club outings.

The appeal is denied as to the following uses:

1. Maintaining an inventory of vehicle parts for sale to the public in any fashion.

2. Any mail order service for vehicles or vehicle parts.

3. Any exchange center for trade or sale of vehicles or vehicle parts.