## Paoletta d/b/a Savannah v. Aetna Casualty & Surety Company

*William D. Irwin,* for plaintiff.
*Robert L. Lackey,* for defendant.

FORNELLI, *J.,* September 20, 1986 — Plaintiff commenced this assumpsit action as an individual doing business as Savannah, a musical group.

Plaintiff seeks to recover under a contract of insurance, $69,235, with interest from March 31, 1983,[1] and damages for detention and loss of profit from defendant insurance company.

Plaintiff's contract of insurance purports to insure against the loss of 68 musical items including instruments, light machines, and electrical and amplifying equipment under a Commercial Articles Floater Policy issued June 7, 1982, by Aetna Casualty & Surety Co. to Savannah with a policy period from June 7, 1982, to June 7, 1983.[2] The loss of these items is alleged to have occurred during the policy period on March 31, 1983.

Plaintiff alleges the submission of proof of loss and all conditions precedent to payment under the policy but defendant has refused to pay plaintiff's claim. Defendant has filed a preliminary objection to plaintiff's complaint which is before this court. The issue presented is whether plaintiff lacks capacity to sue by virtue of his failure to register under the Fictitious Names Act, 54 Pa.C.S. §301 et seq.

## DISCUSSION

Pa.R.C.P. 1017(b)(5) provides in pertinent part:

"(b) Preliminary objections are available to any party and are limited to

"(5) a petition raising the defense of lack of capacity to sue, . . . ."

Failure to register under the Fictitious Names Act may be challenged by a preliminary objection asserting the defense of lack of capacity to sue. See 2

---

1. This is the date on which plaintiff's insured personal property was allegedly stolen. See DISCUSSION, supra.

2. Attached to plaintiff's complaint is floater policy number 03 IMSP 383-13 and countersigned by defendant's representative, but is not signed by Savannah nor any agent thereof.

Goodrich Amram 2d, §1017(b):14, at 89 (citations omitted).

Preliminary objections, however, should be sustained and a complaint dismissed only in cases clear and free from doubt. *Stein v. Richardson*, 302 Pa. Super. 124, 136, 448 A.2d 558, 564 (1982) citing *Interstate Traveller Services Inc. v. Commonwealth of Pennsylvania, Department of Environmental Resources*, 486 Pa. 536, 540, 406 A.2d 1020, 1022 (1979). It must appear with certainty that, upon the facts averred, the law will not permit recovery by plaintiff. *Vitteck v. Washington Broadcasting Co. Inc.*, 256 Pa. Super. 427, 430, 389 A.2d 1197, 1199 (1978) citing *Allstate Insurance Co. v. Fioravanti*, 451 Pa. 108, 299 A.2d 585 (1973). Any doubt should be resolved by a refusal to sustain the objections. Id.

Defendant initially contends that plaintiff filed no responsive pleading to its preliminary objection and, therefore, the averments of fact contained therein are admitted.

Pa.R.C.P. 1029 provides in pertinent part:

"(b) Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implications. . . ." Pa.R.C.P. 1029. Preliminary objections constitute pleadings. Pa.R.C.P. 1017(a).

Failure, therefore, to answer a properly endorsed preliminary objection, as here, constitutes an admission of the averments of fact set forth in the preliminary objection. See *First National Bank v. Anderson*, 7 D.&C.3d 627, 628 (1977); Goodrich Amram 2d, §1029:3, at 270.

Consequently, we take as established for purposes of these proceedings that plaintiff is not the sole owner or member of Savannah or of the items of property alleged to have been covered by the contract of insurance.

It is also admitted that those persons who have conducted business through the fictitious name Savannah have done so in Pennsylvania and have failed to register its fictitious name with the Department of State under the Fictitious Names Act. 54 Pa.C.S. §303(b).

Savannah, not being the proper name of any particular person, is a fictitious name. 54 Pa.C.S. §302. Section 303(b) of the Fictitious Names Act provides in pertinent part:

"(b) Mandatory registration.—

"(1) Except as provided in paragraph (2), any entity which either alone or in combination with any other entity conducts any business in this commonwealth under or through any fictitious name shall register the fictitious name under this chapter and shall amend such registration whenever necessary to maintain the accuracy of the information disclosed thereby.

"(2) Paragraph (1) shall not apply to any:

"(i) Non-profit or professional activities. . . .

"(iv) An unincorporated association." 54 Pa.C.S. §303(b)(1),(2)(i)(iv).

Plaintiff asserts that Savannah is an unincorporated association exempt from the Fictitious Names Act. 54 Pa.C.S. §303(b)(2)(iv). The concept "unincorporated association" generally denotes a voluntary group of persons, without a charter, formed by mutual consent for the purpose or promoting a common enterprise or prosecuting a common objective. See *Local 4076, United Steelworkers of America v. United Steelworkers of America, AFL-CIO*, 327 F. Supp. 1400, 1402-03 (W.D., Pa. 1971). (citations omitted).

"Association" is also defined in Black's Law Dictionary, Third Edition, as:

"The act of a number of persons in uniting together for some special purpose or business. The persons so joining. It is a word of vague meaning used to indicate a collection of persons who have joined together for a certain object."

"Unincorporated association" as defined by Pa.R.C.P. 2151,[3] moreover, means one conducting any business or engaging in any activity of any nature whether for a profit or otherwise under a common name. See also, *Stampolis v. Lewis,* 186 Pa. Super. 285, 288, 142 A.2d 348, 349 (1958), cert. denied, 359 U.S. 907, 79 S. Ct. 582.

Musicians may form unincorporated associations. See *Bright v. Pittsburgh Musical Society, American Federation of Musicians, Local Sixty,* 379 Pa. 335, 337, 108 A.2d 810, 812 (1954).

From the record before us, it appears that plaintiff musical group is an unincorporated association. Neither plaintiff's complaint nor defendant's preliminary objection alleges Savannah as being incorporated. Savannah thus appears to be an association as that term has been defined.

As noted above, the present preliminary objection ought not be sustained and the complaint dismissed unless the requirement to register under the act is clear and free from doubt. Accordingly, we hold on this record that the musical group Savannah is an unincorporated association exempt from registration under section 303(b)(2)(iv) of the Fictitious Names Act, 54 Pa.C.S. §303 (b)(2)(iv) and that its suit may proceed.[4]

---

3. Although Pa.R.C.P. 2151 is not directly applicable to the issues at hand, being the Supreme Court's definition, it is of some assistance in ascertaining the construction to be placed on the Legislature's use of "unincorporated association" in the Fictitious Names Act, 54 Pa.C.S. §303(b)(2)(iv).

4. Both parties herein have raised additional issues. Defendant contends that it will be prejudiced by plaintiff's failure

Plaintiff also asserts that its registration under the Fictitious Names Act was not required because the musical group Savannah is engaged in professional activities and is, therefore, exempt from registration under section 303(b)(i) of the act. Plaintiff contends that all of the members of Savannah were and are professional musicians who earned their livelihood in this manner and were dues-paying members of

---

to register under the Fictitious Names Act since it does not know the identity of the individuals who comprise Savannah and a verdict in favor of Paoletta and payment by Aetna to Paoletta of the value of the instruments and equipment would not protect Aetna from lawsuits by other individuals claiming to be members of Savannah and owners of equipment. The issue is moot since we have found that Savannah is exempt from registering under the Fictitious Names Act. Nonetheless, Aetna could have checked the fictitious names registered and recorded in Mercer County and ascertained the identity of the members thereof as well as required plaintiff to inform defendant of any change in membership and/or owners of the musical equipment and instruments insured under the policy in question prior to issuing this policy to Savannah. Discovery is also available to defendant to ascertain the identities of all former and present members of Savannah prior to trial in order to protect itself from subsequent lawsuits. If, after discovery, defendant finds that Paoletta is precluded from bringing this cause of action or joinder of additional plaintiffs is necessary, defendant can take appropriate action at that time.

Plaintiff also alleged that defendant is estopped from denying plaintiff's capacity to sue for failure to register under the Fictitious Names Act. This is likewise moot. Nonetheless, plaintiff merely asserted this claim in his brief. A brief not being a pleading, it has not been properly raised and, therefore, will not be addressed. It may, however, have been meritorious if, as plaintiff has claimed, that defendant had no trouble in identifying the proper payees of an earlier loss asserted under the same policy of insurance and in fact, made a proper and timely settlement with plaintiff of that loss. See *Macy v. Oswald,* 198 Pa. Super. 435, 182 A.2d 94 (1962); *Hickman v. Bross,* 58 D.&C.2d 137 (1972).

the American Federation of Musicians, an organization of professional musicians.

There is nothing in the record to establish these assertions of professionalism by plaintiff and accordingly we cannot consider plaintiff's assertion of professional exemption status on the present record.[5]

Hence, the following

## ORDER

And now, this September 20, 1985, defendant's preliminary objection is denied.

## ADDENDUM

The Fictitious Names Act nowhere defines "professional activities." Where there is no definition in the statute sought to be construed, and the words are one in common usage, courts must take their common usage meaning. *Derry Township, Dauphin County v. Swartz,* 21 Pa. Commw. 587, 589, 346 A.2d 853, 855 (1975).

1 Pa.C.S. §1903 further provides:

"(a) Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.

"(b) General words shall be construed to take their meanings and be restricted by preceding particular words."

---

5. Had the record properly raised this exemption to registration, an issue of interest would need to be addressed. See ADDENDUM to this opinion, infra.

New Webster's Dictionary of the English Language, 1975 edition, defines "profession" as a vocation requiring specialized training in a field of learning, art, or science. "Professional" is defined therein as referring to activities engaged in for pay that are generally thought to be leisure activities.

Webster's 3rd New International Dictionary,[1] 1968 edition, on the other hand, defines "professional" as being engaged in one of the learned professions or in an occupation requiring a high level of training and proficiency. "Profession" is defined therein as:

". . . a calling requiring specialized knowledge and often long and intensive preparation including instruction in skills and methods as well as in the scientific, historical, or scholarly principles underlying such skills and methods, maintaining by force of organization or concerted opinion high standards of achievement and conduct and committing its members to continued study and to a kind of work which has for its prime purpose the rendering of a public service."

Skill, taste and knowledge, though they be brought to a point of mastery, do not necessarily make a profession. See *City of Reading v. Nigrelli,* 51 Berks County L.J. 89, 92 (1958).

The word "profession," therefore, connotes something more than mere skill in the performance of a task. *Reich v. City of Reading,* 3 Pa. Commw. 511, 518, 284 A.2d 315, 319 (1971) citing *Howarth v. Gilman,* 365 Pa. 50, 56-57, 73 A.2d 665, 658 (1950). Qualities such as skill, taste and knowledge may be acquired by experience or by training as an appren-

---

1. Noted in *Reich v. City of Reading,* 3 Pa. Commw. 511, 294 A.2d 315 (1971) (per curiam) (insurance office is a business, not a professional office).

tice. *City of Reading v. Nigrelli*, 51 Berks County
L.J. at 92, supra. A profession is an "occupation, if
not purely commercial, mechanical, agricultural, or
the like, to which one devotes one's self; a calling in
which one professes to have acquired some special
knowledge used by way either of instructing, guid-
ing, or advising others or of serving them in [some]
art. *United States v. Laws*, 163 U.S. 258, 16 S. Ct.
998, 41 L. Ed. 151 as cited in *Reich v. City of Read-
ing*, 3 Pa. Commw. 511, 518, 284 A.2d 315, 319
(1971).

Yet another definition of a profession is an em-
ployment, especially one requiring a learned educa-
tion, as those of divinity, law, and physics. *Rudolph,
Palitz, and Co. v. Premium Food Co. Inc.*, 24
D.&C.2d 357, 358 (1962), citing *United States v.
Laws*, 163 U.S. 258, 16 S. Ct. 988, 41 L. Ed. 151, or:

". . . a vocation in which a professed knowledge of
some department of science or learning is used by
its practical application to the affairs of others, ei-
ther in advising, guiding, or teaching them, or in
serving their interests or welfare in the practice of
an art founded on it. Formerly, theology, law, and
medicine were specifically known as the profes-
sions; but as the applications of science and learn-
ing are extended to other departments of affairs,
other vocations also received the name. The word
implies professed attainments from mere skill. A
practical dealing with affairs as distinguished from
mere study or investigations; and an application of
such knowledge to uses for others as a vocation, as
distinguished from its pursuit for its own purposes."
*Rudolph, Palitz, & Co. v. Premium Food Co.*, 24
D.&C.2d 357, 359 (1962).

An examination of these various defintions of
"profession" and "professional" reveals that these

terms may be employed in many different senses. Opinions to date which discuss them refer to the various classic, broad and strict meanings attached thereto. In a broad sense, these terms apply to all persons who profess to have special knowledge and who deal primarily in services as distinguished from occupations of a merchantile or manual nature and include a host of vocations beyond the classic pursuits of law, medicine and theology, including but not necessarily limited to dentistry, teaching, architecture and engineering. See *Reich v. City of Reading,* 3 Pa. Commw. 511, 520, 284 A.2d 315, 320 (1971). Funeral directors have also been found to be professional persons in the broad sense of that term. See *Gutkowski v. Phoenixville Borough Zoning Board,* 39 D.&C.2d 479 (1966).

In the narrow sense, these terms refer to what were once considered the only professions and are now frequently referred to as the "learned professions," namely, theology, medicine and law.

It is also interesting to note that the definitions of "professional" appear to embrace a broader range of activity than do those of "profession." "Profession" signifies extensive, as well as intensive, preparation to acquire a specialized knowledge designed to assist and serve the interests and welfare of others with a member's performance being weighed against a high standard created by force or organization or concerted opinion. It also seems to embrace a form of institutionalized education specifically structured to instill the requisite knowledge and high standards expected in the practical application thereof as distinguished from vocations learned solely by experience or apprenticeship.

"Professional," on the other hand, is generally employed in its broadest sense to encompass all activities generally viewed as leisure activities en-

gaged in for pay and, in its narrowest sense, requires a high level of training and proficiency, but does not exclude acquisition thereof by experience or apprenticeship.

Musicians might fall within either the broad or narrow definitions of "professional" and arguably might be embraced under those given to "profession," especially where they attend colleges and similar institutions to study the history and theory underlying their chosen vocation as well as the practical application thereof. They are not self-regulated, however, as are, e.g., doctors, lawyers and dentists.

Yet dance as an art form has been referred to in common parlance, as a profession. See *Kollar Appeal,* 28 D.&C.2d 745, 748 (1962), and dancing instruction as a professional activity. See *Delpriore v. Ball,* 281 App. Div. 214, 118 N.Y.S. 2d 53 (1953) as cited in *Kollar Appeal,* 28 D.&C.2d, supra, at 748-49. The Pennsylvania Supreme Court, moreover, has described a concert dancing teacher as being outstanding in her profession thereby recognizing the elevated status generally afforded to this art. See *O'Neill v. Philadelphia Zoning Board of Adjustment,* 384 Pa. 379, 382, 120 A.2d 901, 903 (1956). Although what has been said of dance might equally apply to music, we decline to rest our analysis solely on the cases noted above.

First, the holdings of these cases do not purport to interpret the Fictitious Names Act. They involve interpretations of zoning ordinance provisions. Secondly, the zoning ordinance provisions at issue in *Kollar Appeal,* supra, e.g., contained a general phrase preceded by particular words, the applicable portion of which provided:

"Professional office or studio of a doctor, dentist, healer, teacher, artist, architect, landscape archi-

tect, musician, lawyer, engineer, magistrate or practitioner of a similar character. . . ."

These particular words covered vocations similar to dances, thereby enabling Judge Groshens in *Kollar Appeal,* supra, to describe dance as a profession. Judge Groshens' reference, moreover, was confined to "common parlance." This restriction supports an inference that he adopted the broad meaning of the term "profession."

Musical groups, such as Savannah, although comprised of unionized "professional"[2] musicians, are not self-regulated and policed as are, e.g., lawyers, doctors, dentists and accountants. Nor do they appear to apply their knowledge of music in a practical way primarily designed to advise or assist the interests and welfare of the general public. Neither are the services rendered by musical groups as a general rule comparable to the private and personalized services performed in a professional office. See *Kemmer v. Kantor,* 36 Lehigh L.J. 346, 347 (1975) (day care center is not a professional office).

On the other hand, the Legislature when drafting the Fictitious Names Act, supra, chose the term "professional activities." This term has broader connotations going beyond the mere classical professions generally referred to as "the professions" or "the learned professions."

The drafters of the act, moreover, used the phrase "professional activities" without providing a specific definition thereof. Nor did they precede this general phrase with particular words such as "doctors, lawyers, dentists and accountants" so as to restrict its meaning. Although we must presume they were aware of and subject to the norms by which the

---

2. "Professional" as used here meaning they offer their musical services for pay.

words they employed would be construed,[3] this presumption must be shaped by the statute in question.

The present Fictititous Names Act is set forth in the act of December 16, 1982, P.L. 1309, §2, and is a codification and compilation of provisions relating to names into the Pennsylvania Consolidated Statutes. Despite the somewhat modified arrangement, 54 Pa.C.S. §303(b)(2)(i) appears to merely carry forward the exemption for professional activities initially set forth in the act of September 23, 1959, P.L. 936, §1. The act of September 23, 1959 may have been in response to prior action taken by the secretary of the commonwealth. Judge Chudoff in *Rudolph, Palitz, & Co. v. Premium Food Co. Inc.*, 24 D.&C.2d 357, 360 (1961), quoted an April 23, 1956 pronouncement of the prothonotary of Philadelphia County:

"The secretary of the commonwealth has taken the position that practice of any of the learned professions, such as law, medicine, dentistry, or public accountancy, is exempt from registration under this law (Fictitious Name Registration Act). Therefore, in order to adopt a policy consistent with the secretary's office no registration with this category will be accepted."

Section 303(a), however, provides for voluntary registration of a fictitious name under which any one or more entities carry on any business or other activity. 54 Pa.C.S. §303(a). This section thereby renders the last portion of the secretary's position, as above cited, contrary to section 303(a) of the Fictitious Names Act. There is, nonetheless, nothing in the act nullifying the first portion thereof.

---

3. See *Gutkowski v. Phoenixville Borough Zoning Board*, 39 D.&C.2d 479, 487 (1966).

Moreover, an overly broad interpretation of "professional activities" would significantly increase the number of exemptions to the act's mandatory registration requirement and seriously undermine the act's purpose to protect persons extending credit in reliance on the assumed or fictitious name and to establish the identity of the individuals owning the business for the information of those who might have dealings with that business. *Hickman v. Bross,* 58 D.&C.2d 137, 139 (1972). The secretary of the commonwealth undoubtedly exempted from registration professions such as law, medicine, dentistry and public accountancy due to their extensive self-regulation and established prerequisites to engage therein believing this combination provided protection comparable to that afforded by the Fictitious Names Act, supra. It therefore, would appear that the Legislature did not intend the phrase "professional activities" to exempt musical groups such as Savannah in the case at bar, there not being the extensive self-regulation with and uniform prerequisites for admittance into its "profession."