Gregory J. RUBINO and Passport Realty, LLC, Petitioners

v.

PENNSYLVANIA GAMING CONTROL BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued April 19, 2010.

Decided July 23, 2010.

Andrew G. Jenkins, Pittsburgh, for petitioners.

Stephen S. Cook, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and BROBSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.[1]

Gregory J. Rubino and Passport Realty, LLC (collectively, Rubino) petition for review of the September 2, 2009, order of the Pennsylvania Gaming Control Board (Board) which held that real estate agents and brokers are not exempt from the registration and certification requirements of section 437a.1 of the Board's regulations, 58 Pa.Code § 437a.1. We affirm.

Rubino is a licensed Pennsylvania real estate agent transacting business through Passport Realty, LLC. Rubino sought to offer professional real estate services to MTR Gaming Group, Inc. (MTR), the parent company of Presque Isle Downs, Inc. (PIDI), which had been awarded a slot machine license by the Board on December 20, 2006. The grant of this license was subject to a statement of conditions (SOC), including SOC 58. SOC 58 required MTR and PIDI to refrain from entering into or engaging in any business activity or transaction with Rubino or his affiliates, with an exception relating to a transaction involving the Green Shingle property.[2] PIDI's

---

1. This matter was argued before a panel consisting of Judge McGinley, Judge McCullough and Senior Judge Flaherty. Following argument, Judge McCullough found it necessary to recuse and the case was assigned to the authoring Judge on June 10, 2010 and was submitted on briefs to Judge Brobson for consideration as a member of the panel.

2. Rubino also owned Tecnica Development Corporation (Tecnica). In 2001, Tecnica entered into a consulting agreement with MTR to provide services related to the development of a racetrack in Erie, Pennsylvania, including land acquisition and acquisition of land development and zoning permits. The consulting agreement provided for compensation of an initial fee of $50,000, a fee of $250,000 when property for the racetrack was acquired, a $10,000 monthly retainer and, after the racetrack is opened, 3% of the earnings of the racetrack before interest, taxes, depreciation and amortization. After the Board expressed concerns over compensation in the nature of a percentage of the earnings, MTR and Tecnica reached an agreement whereby MTR and PIDI paid Tecnica $4.2 million to terminate the consulting agreement. During the course of the consulting agreement, Rubino assisted MTR with the acquisition of three properties, the International Paper property in Erie, a site located along Interstate 90, and the Green Shingle property. MTR is considering the sale of the International Paper prop-

chairman, Ted Arneault, signed the SOC on August 20, 2007.

Subsequent to the execution of the SOC, the Board promulgated regulations requiring any vendor or person seeking to conduct business with a slot machine applicant or licensee to apply for registration and/or certification from the Board. 58 Pa.Code § 437a.1(a), (b). However, the regulations specifically exempt "[p]roviders of professional services including accountants, attorneys, engineers and architects" from the registration and certification requirements. 58 Pa.Code § 437a.1(c)(8).[3] On February 13, 2008, Rubino filed a petition for relief from SOC 58 with the Board. In furtherance of this objective, Rubino sought a declaration that he and his company are exempt from the certification and registration requirements set forth in the Board's new regulations. The Board's Office of Enforcement Counsel (OEC) filed an answer, and the case ultimately was heard before Linda Lloyd, Director of the Office of Hearings and Appeals (OHA).

On January 30, 2009, Director Lloyd issued a report and recommendation that the Board deny the relief requested in Rubino's petition, finding insufficient evidence to support a change to SOC 58 and noting that PIDI freely signed the SOC. However, Director Lloyd disagreed with OEC's argument that the exemption list found in the Board's regulations is all-inclusive and recommended that a licensed real estate agent or broker be included in this exemption. Rubino and OEC filed exceptions to the report and recommendation.

On September 2, 2009, the Board issued an adjudication and order rejecting the exceptions filed by both parties. The Board first addressed what it deemed to be a threshold issue, i.e., whether a licensed real estate agent or broker is included in the exemption. In its analysis, the Board agreed with Director Lloyd that the regulation's list of exempted professionals is not all-inclusive. Nevertheless, the Board distinguished the type of professions identified in the regulation as professions that required "prolonged courses of specialized education at the collegiate level and beyond," from "[r]eal estate agents, [which], although required to be licensed by the Pennsylvania Real Estate Commission, are not required to complete any secondary education, nor are they required to hold a college or high school diploma." (Board op. at 4.)

The Board reviewed the licensure requirements for a real estate salesperson: an applicant must be eighteen years of age and have completed sixty hours of approved, general real estate coursework before taking and passing an examination.[4] The Board also noted the requirements for a real estate broker's license: the applicant must be twenty-one years of age, must be a high school graduate, must complete 240 hours in real estate instruction, and must have been engaged as a licensed

erty to Erie Renewable Energy. Rubino is president of Erie Renewable Energy and handles its real estate and development work. Additionally, Rubino's wife owns fifty percent of Conservation Associates, LLC, which in turn owns thirteen percent of Erie Renewable Energy. Rubino sought relief from SOC 58 to participate in the sale of the International Paper property as well as other properties of MTR/PIDI.

3. As a result of recent amendments, this exemption is now found at section 437a.1(d)(8) of the Board's regulations, 58 Pa.Code § 437a.1(d)(8). However, for purposes of clarity, the opinion will continue to refer to the original section 437a.1(c)(8).

4. Section 521 of the Real Estate Licensing and Registration Act (Real Estate Act), Act of February 19, 1980, P.L. 15, as amended, 63 P.S. § 455.521.

real estate salesperson for at least three years.[5]

Citing *Ridley Township v. Pronesti*, 431 Pa. 34, 244 A.2d 719 (1968) and *Reich v. Reading*, 3 Pa.Cmwlth. 511, 284 A.2d 315 (1971), the Board observed that the mere requirement of licensure of real estate brokers does not, itself, categorize this occupation as a profession. In *Ridley Township*, our Supreme Court held that a licensed real estate broker was not permitted to operate an office as an accessory use in a single-family dwelling. The applicable ordinance allowed accessory uses that were "customarily incidental" to a permitted use and defined the "customarily incidental" to include the *professional* office or studio of a doctor, dentist, masseur, teacher, artist, architect, musician, lawyer, magistrate or practitioner of a similar character.

In *Reich*, this court held that the office of a licensed insurance broker was a "business office" rather than a "professional office" and, therefore, was not a permitted use in a multi-family zoning district. In doing so, we specifically held that the mere fact that an insurance broker was licensed by the state did not, of itself, categorize his occupation as a "profession." "There are various occupations required to be licensed by the Commonwealth but which have been held not to be professions, such as real estate brokers...." *Reich*, 284 A.2d at 320 (citations omitted). Furthermore, we acknowledged in *Reich* that an exact definition of the term "profession" and "professional" was difficult, was not limited to the traditional professions of theology, medicine, and law, and included professions such as teaching, architecture, and engineering "for which considerable educational preparation and continuing study are required." *Id.*, 284 A.2d at 320. While acknowledging the occupation of an insurance agent/broker as "important and specialized," after consideration of the provisions of the ordinance at issue, as well as the applicable licensure requirements, we concluded that an insurance office was a business office rather than a professional office. *Id.*

The Board determined that unlike accountants, engineers, attorneys and architects, which professions require prolonged courses of specialized education at the collegiate level and beyond, real estate agents and brokers are not required to complete any secondary education and thus, real estate agents and brokers are not the type of professionals contemplated by the regulation. (Board's decision at 4, 5.) Accordingly, the Board rejected Director Lloyd's recommendation to extend the exemption to real estate agents and brokers. The Board held in abeyance the remainder of the matter, concerning SOC 58, until such time as Rubino submits certified vendor applications through PIDI and a background investigation is completed. Rubino then filed a petition for review with this Court.[6]

---

**5.** Section 511 of the Real Estate Act, 63 P.S. § 455.511.

**6.** By order dated November 2, 2009, this Court directed the Board to issue an amended order clarifying whether its September 2, 2009, order was an interlocutory order or a final order certified pursuant to Pa. R.A.P. 341(c). The Board issued an amended order dated November 12, 2009, declaring that its September 2, 2009, order was not a final order pursuant to Pa. R.A.P. 341(c). Accord-

ingly, this Court dismissed Rubino's petition for review by order dated December 18, 2009. Rubino filed an application for reconsideration with this Court, which was granted by order dated December 28, 2009, finding that Rubino had timely filed a petition for review under the note to Pa. R.A.P. 341(c). By subsequent order dated January 25, 2010, this Court granted the petition for review from the Board's interlocutory order and stated that it would consider the issue of whether real es-

On appeal, Rubino argues that the Board erred as a matter of law in concluding that real estate agents and brokers are not exempt from Board jurisdiction by virtue of the regulatory exemption of certain "professionals" found at 58 Pa.Code § 437a.1(c)(8).[7] We disagree.

We begin by noting that a reviewing court must give considerable weight and deference to an agency's interpretation of a regulation the agency is charged with enforcing. *Bayada Nurses, Inc. v. Department of Labor and Industry*, 958 A.2d 1050 (Pa.Cmwlth.2008). Moreover, an agency's interpretation of its regulation is controlling unless the interpretation is plainly erroneous, inconsistent with the regulation or statute, or unreasonable. *Portalatin v. Department of Corrections*, 979 A.2d 944 (Pa.Cmwlth.2009).

In support of his argument that real estate agents are, in fact, professionals, Rubino reiterates the licensure requirements for real estate salespersons and notes that real estate licensees must maintain a good reputation and complete fourteen hours of continuing education every two years.[8] However, Rubino acknowledges our holding in *Reich* that the mere requirement of licensure does not categorize an occupation as a profession. In addition, the educational requirements were specifically considered by the Board and found to be insufficient to warrant the classification of real estate salespersons as professionals for purposes of applying section 437a.1(c)(8) of the Board's regulations. We conclude that such requirements do not compel a finding that the Board's interpretation of section 437a.1(c)(8) is plainly erroneous, inconsistent with the regulation or the Pennsylvania Race Horse Development and Gaming Act (Gaming Act), 4 Pa.C.S. §§ 1101–1904, or unreasonable, especially in light of the Board's consideration of the "prolonged courses of specialized education at the collegiate level and beyond" for the professionals recognized in the regulation. (Board decision at 4.)

Rubino contends that more recent decisions reflect the courts' recognition of real estate agents and brokers as professionals. However, in support of this assertion, Rubino relies entirely upon general statements taken out of context from cases involving issues not relevant here. For example, Rubino relies on a single reference to the "profession of selling real estate" in *Younkin v. Bureau of Professional and Occupational Affairs, State Real Estate Commission*, 774 A.2d 1281 (Pa. Cmwlth.2001). The issue in *Younkin*, however, was whether a licensed auctioneer brokered a sale of real estate without being licensed to do so. There was no discussion as to whether real estate agents are, by definition, professionals. Rubino also cites *D.J. Malatesta Associates, Inc. v. Century 21 Rueter, Inc.*, 739 A.2d 1076 (Pa.Cmwlth.1999), a case involving claims against real estate brokers brought under

tate agents and brokers are exempt from Board jurisdiction by virtue of the regulatory exemption of certain "professionals" found at 58 Pa.Code § 437a.1(c)(8).

7. Our scope of review of an agency's adjudication is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704. Moreover, because Rubino raises a question of law, appellate review of the Board's order is plenary. *Tire Jockey Service, Inc. v. Department of Environmental Protection*, 591 Pa. 73, 915 A.2d 1165 (2007).

8. Sections 501 and 404a of the Real Estate Act, respectively. 63 P.S. §§ 455.501, 455.404a. Section 404a was added by the Act of July 9, 1990, P.L. 338.

Real Estate Recovery Fund (Fund).[9] A footnote in the case describes the Fund as similar to other funds that protect the public from "professional" fraud or misconduct.[10] Again, this case also did not address the issue of whether real estate agents meet the definition of a professional. Rubino's reliance on *Krauss v. Claar*, 879 A.2d 302 (Pa.Super.), *appeal denied*, 586 Pa. 713, 889 A.2d 1217 (2005), is also misplaced. Therein, the court determined that Pa. R.C.P. No. 1042.1, which addresses professional liability actions, does not include real estate agents/brokers as a licensed professional subject to the rule. Rather, Pa. R.C.P. No. 1042.1 only recognizes the following as licensed professionals: health care provider, accountant, architect, chiropractor, dentist, engineer or land surveyor, nurse, optometrist, pharmacist, physical therapist, psychologist, veterinarian, and attorney at law.

■ Furthermore, we note that in accordance with 4 Pa.C.S. § 1202(a)(1) of the Gaming Act, the Board has sole regulatory authority over the conduct of gaming and related activities in the Commonwealth, vesting broad discretion with the Board to administer all aspects of the gaming industry in Pennsylvania. The Board, as authorized by 4 Pa.C.S. § 1102(1), has the responsibility to protect the public by enacting regulations and policing all activities involving gaming. Additionally, the Board via 4 Pa.C.S. § 1202(b)(12), has the specific power and duty to issue, approve, renew, revoke, suspend, condition or deny issuance or renewal of slot machine licenses at its discretion. The vendor registration and certification regulation represents one effort by the Board to fulfill this responsibility. In this capacity, the Board determined that real estate agents and brokers are not the type of professional contemplated by the Board's regulations at 58 Pa.Code § 437a.1(c)(8) and are, therefore, not exempt from the Board's vendor registration and certification requirements. We conclude that the Board's interpretation of section 437a.1(c)(8) is both reasonable and consistent with the Board's statutory obligations.

Accordingly, the order of the Board is affirmed.

Judge McCULLOUGH did not participate in the decision in this case.

### ORDER

Now, July 23, 2010, the order of the Pennsylvania Gaming Control Board, in the above-captioned matter, is affirmed.

---

**9.** The Real Estate Recovery Fund was established by the Act of February 19, 1980, P.L. 15.

**10.** Rubino also quotes a statement in *Gobao v. State Real Estate Commission*, 96 Pa.Cmwlth. 341, 507 A.2d 917 (1986), which held that the penal provisions of the Real Estate Act were not intended to cover a felony such as possession of controlled substances but were meant to curb the fraudulent practices that had crept into the practice of "the real estate profession."