IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kathleen DeFrancesco,          :
            Petitioner        :
                            :
        v.                   :
                            :
Unemployment Compensation    :
Board of Review,              :    No. 1802 C.D. 2019
           Respondent     :    Submitted: September 18, 2020

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON          FILED: January 8, 2021

Kathleen DeFrancesco (Claimant), *pro se*, petitions for review of the November 20, 2019 order of the Unemployment Compensation Board of Review (Board) denying her request to withdraw her January 7, 2018 application for unemployment compensation (benefits) and to cancel the corresponding benefit year. Upon review, we affirm the Board's denial.

## I. Background

Claimant last worked for Merck Sharpe & Dohme (Employer) on January 2, 2018.[2] Notice of Determination, 2018 Severance, 2/1/18 at 1, Finding of

---

[1] The decision in this case was reached before January 4, 2021, when President Judge Leavitt served as President Judge.

[2] We note that although the referee's decision states that Claimant separated from Employer on December 8, 2017, this discrepancy does not affect the outcome of our review. *See* Referee's Decision & Order, 3/1/19 at 1, Certified Record (C.R.) at 29.

Fact (F.F.) 1, Certified Record (C.R.) at 22. Claimant received a regular full-time weekly wage of $2,498.20. Notice of Determination 2018 Severance, 2/1/18 at 1, F.F. 2, C.R. at 22. Claimant received a total of $139,899.84 in severance pay from Employer. Notice of Determination 2018 Severance, 2/1/18 at 1, F.F. 3, C.R. at 22.

Unemployment compensation is payable to a claimant who receives at least 37% of her total base wages in one or more quarters other than the highest quarter in the base year. *See* Section 401(a)(2) of the Unemployment Compensation Law (Law);[3] *see also* Section 4(a) of the Law, 43 P.S. § 753(a) (defining the term "base year" to include "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year"). Severance pay is considered wages for purposes of payment of benefits. *See Cugini v. Unemployment Comp. Bd. of Rev.*, 512 A.2d 1169, 1171 (Pa. 1986) (stating, "it is clear that severance pay is includable in the term "wages"). Thus, although the receipt of severance pay from an employer does not render a claimant ineligible for benefits, it may impact the amount of benefits awarded. *See* Section 404(d) of the Law, 43 P.S. § 804(d) (establishing a formula for the deduction of severance pay from benefits awarded to eligible claimants); *see also Rebo v. Unemployment Comp. Bd. of Review*, 499 A.2d 732, 735 (Pa. Cmwlth. 1985) (noting that "Section 404(d) [of the Law] relates to deductions from compensation and pertains to employees *who have already been determined to be eligible*" under the Law) (emphasis in original). The amount of severance pay received by the claimant is deductible from the claimant's benefits in the weeks immediately following the claimant's separation from employment, in the amount of the claimant's regular full-time daily or weekly wage. Section 404(d)(1.1)(iii), 43 P.S. § 804(d)(1.1)(iii).

---

[3] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 801(a)(2).

Claimant applied for benefits on January 9, 2018, effective January 7, 2018[4] (*i.e.*, for the week ending January 13, 2018), with a weekly benefit rate of $561. Notice of Determination 2018 Severance, 2/1/18 at 1, F.F. 6, C.R. at 22; Referee's Decision & Order, 3/1/19 at 2, C.R. at 30. Claimant's application was effective for a 52-week benefit period ending January 5, 2019. Board's Decision & Order, 11/20/19 at 1, F.F. 2, C.R. at 96. On February 1, 2018, the Department of Labor and Industry (Department) issued a notice of determination informing Claimant that her receipt of severance pay from Employer would be attributed to and deducted from her benefits.[5] *See* Notice of Determination 2018 Severance, 2/1/18 at 1, C.R. at 22. The Department explained that it calculated a total deductible amount of severance pay of $119,102 by subtracting 40% of Pennsylvania's average annual wage from $139,899.84 in accordance with Section 404(d) of the Law. *Id.* (citing 43 P.S. § 804(d)). The Department therefore determined that $114,954 of deductible severance pay would be attributed to Claimant's disqualification period for the weeks ending January 13, 2018 through November 24, 2018, and that $1,649 of deductible severance pay would be attributed to the week ending December 1, 2018. *Id.* Claimant did not appeal this determination. Board's Decision & Order, 11/20/19 at 2, F.F. 7, C.R. at 97.

---

[4] Claimant's application for benefits filed on January 9, 2018 shall hereinafter be referred to by the effective date, January 7, 2018.

[5] We note that the Department misstated that Claimant was "ineligible" for benefits during the disqualification period, *see* Notice of Determination 2018 Severance, 2/1/18 at 1, C.R. at 22, as Section 404(d)(1)(iii) of the Law provides that "each *eligible* employe who is unemployed with respect to any week ending subsequent to July 1, 1980 shall be paid, with respect to such week, compensation in an amount equal to his weekly benefit rate less the total of . . . the amount of severance pay that is attributed to the week." 43 P.S. § 804(d)(1)(iii) (emphasis added); *see also Rebo v. Unemployment Comp. Bd. of Rev.*, 499 A.2d 732, 735 (Pa. Cmwlth. 1985).

Claimant reopened her claim on December 12, 2018. Claim Record at 2, C.R. at 4. On December 18, 2018, the Department of Labor and Industry (Department) released benefits to Claimant for benefit week ending December 15, 2018. Board's Decision & Order, 11/20/19 at 1, F.F. 3, C.R. at 96. On January 7, 2019, the Department released benefits to Claimant for weeks ending December 22, 2018, December 29, 2018 and January 5, 2019 (the remainder of her benefit year). Board's Decision & Order, 11/20/19 at 1, F.F. 4, C.R. at 96.

Claimant filed a second application for benefits, effective January 6, 2019. Board's Decision & Order, 11/20/19 at 2, F.F. 9, C.R. at 97; Referee's Decision & Order, 3/1/19 at 2, C.R. at 30. On January 14, 2019, the Department issued a notice of financial determination deeming Claimant financially ineligible for benefits because she did not earn at least 37% of her base year[6] qualifying wages outside the quarter in which she received the highest wages.[7] Notice of Financial Determination, 1/14/19, Supplemental Reproduced Record (S.R.R.) at 7b.[8] Claimant timely appealed the Department's determination. Referee's Decision & Order, 3/1/19 at 2, C.R. at 30. On February 27, 2019, the referee held a hearing at

---

[6] The Department identified a base year of October 1, 2017 to September 30, 2018, based on Claimant's application date of January 6, 2019. *See* Notice of Financial Determination, 1/14/19, S.R.R. at 7b.

[7] Although the Department did not identify this provision in its determination, it evidently relied upon Section 401(a)(2) of the Law, which requires as a prerequisite for financial eligibility that "not less than thirty-seven per centum (37%) of the employe's total base year wages have been paid in one or more quarters, other than the highest quarter in such employe's base year." 43 P.S. § 801(a)(2).

[8] We note that we have added "b" following the page numbers in our citations to the supplemental reproduced record, although the Board failed to do so in accordance with Pennsylvania Rule of Appellate Procedure 2173. *See* Pa.R.A.P. 2173 (providing that pages of the supplemental reproduced record shall be numbered separately in Arabic figures followed by a small letter "b").

which Claimant testified. Transcript of Testimony (T.T.), 2/27/19 at 1, S.R.R. at 46b. On March 1, 2019, the referee mailed Claimant a decision and order remanding the matter for issuance of a determination relating to Claimant's request to backdate her claim to June 24, 2018 and for "backdating for weeks of benefits subsequent to that date."[9] *Id.* On April 5, 2019, the Department issued a determination permitting backdating for compensable weeks ending June 30, 2018 through December 1, 2018. Notice of Determination, 4/5/18 at 1, C.R. at 33.

Accordingly, by letter dated July 8, 2019, Claimant requested cancellation of her January 7, 2018 application for benefits and cancellation of the corresponding benefit year to permit her to file an application dated June 24, 2018, asserting that she "receiv[ed] inaccurate information from unemployment representatives." Formal Notification to Cancel Initial Unemployment Claim (Formal Notification), 7/8/19 at 1-2, C.R. at 26-27. Claimant stated that upon becoming unemployed, she received a separation packet from Employer advising her to contact her local unemployment office to obtain information regarding "eligibility and timing of eligibility" for benefits. Formal Notification, 7/8/19 at 1, C.R. at 26. Claimant averred that on January 9, 2018, she explained over the phone to an unemployment representative that Employer was to provide her with a "lump sum severance" and that she did not require immediate financial assistance. *Id.* Claimant stated that "[a]t no time did [the unemployment representative] provide the option that [she] could wait to apply for benefits." *Id.* Claimant further averred as follows:

---

[9] Claimant asserts in her appellate brief that she "never asked that the claim be backdated," and that at the "initial hearing on February 27, 2019, [she] specifically asked that the initial claim be retroactively canceled [to] allow [her] to file a new claim with a start date of June 24, 2018 to collect the full 26 weeks of benefits." Claimant's Brief at 8; *see also* T.T., 8/23/19 at 7, C.R. at 74.

5

In February 2018 I received [the] Notice of Determination of 2018 Severance. The Determination reads [C]laimant is ineligible for UC benefits from week(s) ending 1/13/18 through 1/13/18[10] and . . . [C]laimant's benefits are reduced by $1649.00 for the week ending 12/1/18. On February 6 & 9, 2018 I reach[ed] out to [UC] stating that I don't understand the wording of the determination. One week of ineligibility should be $561. I called [UC] on February 12, 2018. [A representative] stated that based on the severance the start date was pushed to December 2, 2018 and that I could contact [UC] via the internet to reopen the claim in January of 2019. (It is at this point the representative should have provided the option to me of canceling my claim but didn't!) It is because of this phone call that I did not file an appeal in February of 2018!

In January of 2019 I contacted [UC] when my original claim was expiring. The response once again was "Your current claim is effective 1/7/2018 and will expire on 1/5/2019. YOU MAY REAPPLY for UC benefits on 1/16/2019 when your claim expires by completing a new initial application on the [D]epartment[']s website.

[On] January 6, 2019[,] I filed a new application and was notified that I was ineligible. I filed an appeal. My appeal hearing was on 2/27/2019. I specifically asked the referee to consider retroactively cancelling my initial claim that was filed on January 9, 2018 and to allow me to refile on June 24, 2018 in order to collect my full [UC] benefits based on incorrect information from the [UC] office on multiple occasions.

In April 2019 after I received the notice of determination from the appeal, I reached out to [UC] on multiple occasions again and was once again provided inaccurate information. I was specifically asking about the next steps

---

[10] *See supra* note 6.

because the information provided from [UC] is vague and doesn't outline next steps. It appears that I won the appeal and that is exactly what the [] representative conveyed to me during phone conversations. "You don't need to do anything, you won the appeal." I was told they were working to backdate the [application for benefits] to June 24, 2018. I would receive 22 weeks at $561. Once again I asked about next steps for me and [the representative] stated someone would call me. I asked for a time frame and she couldn't give me one. I had multiple phone conversations which I initiated with [unemployment] representatives from this point through July of 2019, all of whom said they were working on the claim. No one ever called me back[.] I had to initiate phone calls on a weekly basis to try to get this situation resolved. It wasn't until May 9th, 2019 that I talked with a supervisor at the Duquesne office that I learned that my claim was being denied even though I had a favorable decision from the appeal hearing.

Formal Notification, 7/8/18 at 1-2, C.R. at 26-27.

On July 10, 2019, the Department denied Claimant's request to cancel her January 7, 2018 application for benefits and the corresponding benefit year, noting that Claimant failed to submit her request within 15 days from the date the Department issued the first benefit payment in accordance with Section 65.56 of the Department's Regulations, 34 Pa. Code § 65.56. Notice of Determination, 7/10/19 at 1, F.F. 4-5, C.R. at 45. Claimant appealed, and the referee held a hearing on August 23, 2019, at which both Claimant and a representative of the Department testified. Petition for Appeal, 7/15/19, C.R. at 48; Transcript of Testimony (T.T.), 8/23/19 at 1, C.R. at 68. Claimant testified that prior to becoming unemployed, she reached out to the Department to obtain information regarding benefits, but that the Department failed to advise her to delay her application for benefits due to her receipt of a severance payment, even though she "specifically asked about timing."

7

T.T., 8/23/19 at 5-6, C.R. at 72-73. Claimant's further testimony largely reiterated the assertions contained in her July 8, 2019 request regarding the alleged receipt of erroneous advice from the Department. *See* T.T., 8/23/19 at 6-8, C.R. at 73-75. The Department's representative testified that "[a]t no point in time would the office have advised you or been able to advise you as [to] what your eligibility would be on the 2019 claim," asserting that the Department is "not permitted to give information in the future." T.T., 8/23/19 at 8, C.R. at 75.

On August 27, 2019, the referee issued a decision and order granting Claimant's request to withdraw her initial application for benefits and cancel the corresponding benefit year. Referee's Decision & Order, 8/27/19 at 3, C.R. at 81. The referee determined that "the Department . . . did not enable [Claimant] to structure her claim so as to maximize eligibility." Referee's Decision & Order, 8/27/19 at 2, C.R. at 80. The referee determined that "[C]laimant testified credibly that an agency representative told her that she would be permitted to withdraw[] her application for benefits dated January 7, 2018,"[11] such that "[i]t would be inequitable under these circumstances to deny . . . [C]laimant's request." *Id.*

The Department appealed. On November 20, 2019, the Board reversed the decision of the referee and denied Claimant's request to withdraw her January 7, 2018 application for benefits and to cancel the corresponding benefit year pursuant to Section 401(c) of the Law and Section 65.56 of its Regulations. Petition for Appeal, 9/11/19 at 1, C.R. at 85; Board's Decision & Order at 3, C.R. at 98 (citing 43 P.S. § 801(c); 34 Pa. Code § 65.56). The Board explained that Claimant failed to satisfy the requirements of Section 65.56 of its Regulations, as there is no evidence

---

[11] After mistakenly identifying January 7, 2018 as the filing date of Claimant's application for benefits, the referee correctly identified January 7, 2018 as the *effective* date of Claimant's application. *See* Referee's Decision & Order, 8/27/19 at 2, C.R. at 80.

8

that Claimant requested to withdraw her application and cancel the corresponding benefit year within 15 days of the date on which the Department issued the first payment of benefits to Claimant. Board's Decision & Order at 3, C.R. at 98 (citing 34 Pa. Code § 65.56). Claimant filed a petition for review with this Court.[12]

## II. The Parties' Positions

On appeal,[13] Claimant requests that this Court reverse the November 20, 2019 decision of the Board denying her request to withdraw her initial application for benefits and to cancel the corresponding benefit year. Claimant's Brief at 14. Claimant seeks to cancel her initial claim for benefits and file a retroactive claim with an effective date of June 24, 2018 in order to permit her to

---

[12] On February 21, 2020, Claimant filed an application for relief in the form of a motion to compel (Motion to Compel), requesting that this Court accept as evidence a Verizon phone record log for billing period February 4, 2018 through March 3, 2018, which she asserted was accepted as evidence by the referee at the February 27, 2019 hearing. Motion to Compel, 2/21/20. The Board filed an answer on March 4, 2020 opposing Claimant's motion to expand the record on the basis that the Verizon phone bill was not entered into evidence before the referee. Board's Answer at 3, ¶ 9. On March 13, 2020, Claimant filed another application for relief (Application for Relief), again asserting that the Verizon phone log was admitted as evidence at the February 27, 2019 hearing and, therefore, should be entered into the record on appeal. Application for Relief, 3/13/20. We issued orders deeming Claimant's Motion to Compel and Application for Relief as motions to correct and expand the record. We directed the Board to certify and transmit a supplemental certified record containing a copy of the February 27, 2019 hearing transcript and all exhibits admitted into evidence at the hearing. Cmwlth. Ct. Order, 3/13/20; Cmwlth. Ct. Order, 4/13/20. On June 29, 2020, the Board submitted a supplemental certified record containing a transcript of the February 27, 2019 hearing and a copy of the Verizon phone log, which had been admitted as an exhibit at the hearing. *See* T.T., 2/27/19 at 4. On July 9, 2020, this Court entered an order granting Claimant's Motion to Compel and Application for Relief, stating that we would consider the Verizon phone records and other records in the supplemental certified record. Cmwlth. Ct. Order, 7/9/20.

[13] This Court's review is limited to a determination of whether substantial evidence supported necessary findings of fact, whether errors of law were committed, or whether constitutional rights were violated. *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014); *see also* Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704. Further, where, as here, the petitioner does not dispute the findings of fact, they are conclusive on appeal. *Gibson v. Unemployment Comp. Bd. of Rev.*, 760 A.2d 492 (Pa. Cmwlth. 2000).

collect full benefits. *Id.* Claimant avers that she "proactively reached out [to the Department] multiple times seeking information," including by e-mail on February 6, 2018 and February 9, 2018 and by phone on February 12, 2018, but that she "was provided with inaccurate information which had a severe impact on [her] unemployment compensation benefits." *Id.* at 11. Claimant contends that "[d]uring [the] phone call on February 12, 2018 the [] representative said that [she] could reopen the claim over the internet to collect the remainder of benefits," and also that "[t]he representative led [her] to believe that everything was fine with [her] claim." *Id.* at 11-12. Claimant asserts that she "was not aware there was a problem until January of 2019 when [she] learned that [she] was ineligible for benefits." *Id.* at 12. Claimant also contends that on April 9, 2019, an unemployment representative informed her over the phone that she "won the case" and need not take any further action, as the Department was working to backdate the application for benefits, and that she would receive the additional 22 weeks at $561 per week. *Id.* at 13. Claimant maintains that the "representatives provided inaccurate information and withheld information fully knowing that the [application for benefits] filing date and severance package would affect the compensation benefits and replied with a canned response of reopening the claim in order to collect the remaining benefits." *Id.*

The Board counters that Claimant failed to request withdrawal of her application within the requisite time period pursuant to Section 65.56 of the Department's Regulations. Board's Brief at 6-8 (citing 34 Pa. Code § 65.56). The Board notes that because the Department issued payment to Claimant on December 18, 2018 for claim week ending December 15, 2018, Claimant had until January 2, 2019 to request withdrawal of her application, and that Claimant failed to do so until July 8, 2019. *Id.* at 8; *see also* Department's Appeal, 9/11/19 at 1, C.R. at 88. The

10

Board also points out that Claimant reopened her claim for benefits on December 12, 2018, after completion of the severance deduction. Board's Brief at 8. Further, the Board contends that its "interpretation of this plainly written regulation was reasonable," such that it did not err in denying Claimant's untimely request to withdraw her claim. *Id.* at 9. Asserting that a reviewing court must give considerable weight and deference to an agency's interpretation of a regulation the agency is charged with enforcing, the Board maintains that its interpretation of the Department's regulation is controlling unless the interpretation is plainly erroneous, inconsistent with the regulation or statute, or unreasonable. *Id.* at 6 (citing *Rubino v. Pa. Gaming Control Bd.*, 1 A.3d 976, 980 (Pa. Cmwlth. 2010); *Groce v. Dep't of Env't Prot.*, 921 A.2d 567, 573 (Pa. Cmwlth. 2007)). Moreover, the Board contends that Claimant's confusion regarding the effect of the receipt of severance pay on eligibility for benefits does not justify her untimely request. *Id.* Noting that the Department need not instruct claimants regarding how to maximize receipt of unemployment benefits, the Board asserts that unemployment representatives are "under no obligation to advise claimants how to circumvent the severance deduction." *Id.* at 13 (quoting *Egreczky v. Unemployment Comp. Bd. of Review*, 183 A.3d 1102, 1106 (Pa. Cmwlth. 2017); *see also id.* at 11 (citing *Hughes v. UCBR*, 186 A.2d 453, 454 (Pa. Super. 1962)). Further, the Board contends that laypersons electing to proceed *pro se* assume the risk of adverse outcomes resulting from lack of legal training and expertise. *See id.* at 11 (citing *Vann v. Unemployment Comp. Bd. of Rev.*, 494 A.2d 1081, 1086 (Pa. 1985)). The Board maintains, moreover, that Claimant's receipt of the instruction to reopen her claim in order to collect the remainder of benefits was "completely accurate," and that the Department was not

responsible for Claimant's faulty assumption that she could collect benefits following the close of her benefit year on January 5, 2019. *See id.* at 13-14.

### III. Discussion

Section 65.56 of the Department's Regulations provides, in relevant part:

> a) A claimant may request to withdraw an application for benefits and cancel the corresponding benefit year *only if the following requirements are met*:
>
> (1) If benefits are paid to the claimant pursuant to the application or benefits otherwise payable to the claimant pursuant to the application are used to recoup an overpayment of benefits, the claimant's request to withdraw the application and cancel the corresponding benefit year is made no later than . . .
>
> (i) *Fifteen days after the Department issues the first payment of benefits* or first uses benefits otherwise payable to recoup an overpayment.
>
> . . . .
>
> (2) All benefits paid to the claimant pursuant to the application, if any, are repaid.
>
> . . . .
>
> (b) A request to withdraw an application for benefits and cancel the corresponding benefit year is not effective until the Department approves it. *The Department will deny a request to withdraw an application for benefits and cancel the corresponding benefit year if the requirements of this section are not met or good cause exists to disapprove the request.*

34 Pa. Code § 65.56 (emphasis added).

Here, the deadline for Claimant to withdraw her initial application for benefits was January 2, 2019—15 days after the Department issued the first payment of benefits on December 18, 2018. *See* 34 Pa. Code § 65.56; Board's Decision & Order, 11/20/19 at 1, F.F. 3, C.R. at 96. However, Claimant did not submit her request for withdrawal until July 8, 2019. *See* Formal Notification, 7/8/19 at 1, C.R. at 26. Therefore, her request was untimely.

Nevertheless, Claimant contends that the Department should accept her untimely application, because an unemployment representative advised her on February 12, 2018 that she could reopen her claim over the internet to collect the remainder of her benefits, thereby leading her "to believe that everything was fine with [her] claim." *See* Claimant's Brief at 11-12; *see also* Formal Notification, 7/8/19 at 1, C.R. at 26. As correctly asserted by the Board, this alleged advice was not erroneous. Claimant reopened her claim on December 12, 2018, and the Department released benefits to Claimant for benefit weeks ending December 15, 2018 through January 5, 2019—the remainder of the benefits to which she was entitled following the deduction of severance pay in accordance with Section 404(d) of the Law, 43 P.S. § 804. *See* Board's Decision & Order, 11/20/19 at 1, F.F. 3-4, C.R. at 96. Moreover, the Department's February 1, 2018 determination specifically informed Claimant of the impact of her severance pay on her eligibility for benefits, stating that her benefits from weeks ending January 13, 2018 to November 24, 2018 were fully offset by her severance pay and that her benefits were reduced by $1,649 for the week ending December 1, 2018, in accordance with Section 404(d) of the Law due to the receipt of severance pay from Employer. Notice of Determination 2018 Severance, 2/1/18 at 1, C.R. at 22 (citing 43 P.S.

13

§ 804(d)). Claimant's confusion regarding this communication does not indicate any error on the part of the Department.[14] *See Jennings v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 216 C.D. 2018, filed Sept. 7, 2018), slip op. at 10-12, 2018 WL 4262181, at *5-*6 (unreported) (finding that the "[c]laimant fail[ed] to demonstrate that she received any incorrect information from the Department, or that she acted on any such information in a way that reduced the . . . benefits she received" following receipt of severance pay, where the Department's determination clearly stated the dates of her benefit year and claimant should have been able to "readily discern from this determination that by the time her severance deductions ended, there would be only 14 weeks, not 26, remaining in her benefit year").[15]

Claimant further asserts that on April 9, 2019, an unemployment representative informed her over the phone that she "won the case" and need not take any further action, as the Department was working to backdate her application for benefits. *Id.* at 13. Notably, this information was also correct, in that Claimant had been successful in seeking to backdate her second application for benefits. Moreover, this alleged communication took place more than three months past Claimant's January 2, 2019 deadline to request withdrawal of her application for benefits. *See Egreczky*, 183 A.3d at 1107 (holding that the Department did not err,

---

[14] Claimant points out that the Department's February 1, 2018 notice of determination contains a typo, as it incorrectly states that she was "ineligible for UC benefits from weeks(s) ending 1/13/2018 through 1/13/2018." Claimant's Brief at 11 (quoting Notice of Determination, 2/1/18 at 1, C.R. at 22). Claimant contends that she "specifically questioned the one week ineligibility" but that "it was never addressed." *Id.* We note, however that this discrepancy does not bear upon Claimant's failure to timely request withdrawal of her initial application for benefits in accordance with Section 65.56 of the Department's Regulations, 34 Pa. Code § 65.56. Further, the Department correctly identifies elsewhere in the same determination a disqualification period extending from "[claim week ending] 1/13/2018 through week ending 11/24/2018[.]" *See* Notice of Determination, 2/1/18 at 1, C.R. at 22.

[15] This unreported decision is cited as persuasive authority pursuant to this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

where claimant's receipt of advice from an unemployment representative that "he should have delayed filing for benefits until a more optimal month . . . occurred after [that month had passed] and did not impact [c]laimant's failure to withdraw his initial application for benefits"); *Jennings*, slip op. at 12 (noting that "conflicting information from the Department, if any, could not have affected [c]laimant's eligibility for further [] benefits" where "any attempt to change [c]laimant's benefit year . . . would have been untimely" by the time she received the alleged misinformation, such that claimant "was already ineligible before she began her alleged inquiries").

Claimant testified that "[she] was relying on the expertise of the unemployment representatives to let [her] know" how to maximize receipt of benefits, and that she "reached out to the [Department] . . . multiple [times], trying to gather data," but "was misinformed every step of the way." T.T., 2/27/19 at 3-4, S.R.R. at 48b-49b. However, this Court has rejected the contention that the Department bears the responsibility to advise claimants regarding how to most advantageously file for benefits. *See Egreczky*, 183 A.3d at 1105-06 (noting the Board's explanation that "[t]he severance deduction was implemented to prevent the simultaneous receipt of benefits and large severance payouts that essentially amount to salary replacement"). In *Egreczky*, a claimant submitted a request to backdate his application for benefits in order to secure eligibility following severance pay deductions, asserting that the Department misled him regarding the most opportune time to file for benefits. *Id.* at 1105. The claimant alleged that he "was given conflicting information in reference to the deductibility of his severance pay by UC Service Center representatives." *Id.* In affirming the Board's denial of the claimant's request, we held:

15

[The c]laimant contends that representatives from the UC Service Center provided him with incomplete or inaccurate information about his application. Specifically, when [the c]laimant contacted the UC Service Center, he was told, "go ahead and file and you'll get a determination." . . . [The c]laimant asserts that "[h]e had no reason to question or know that he had a choice of when to initiate his application for benefits, or that the timing of the application would determine his benefit eligibility." *Id.* at 19. [The c]laimant argues that the UC Service Center had a duty to inform him that he could delay filing for benefits and that the timing of his application would determine his benefit eligibility.

We disagree with [the c]laimant. "To impose a duty on the [unemployment compensation] authorities in each local office to sit down with each and every applicant . . . and fully explain all the possibilities under the law would render its administration burdensome, cumbersome and utterly impossible to implement." *Hughes v. Unemployment [Comp.] Board of [Rev.]*, . . . 186 A.2d 453, 454 (Pa. Super. 1962). Here, the UC Service Center accepted [the c]laimant's filing of his application for benefits effective July 6, 2014, and it made a deduction for his severance pay. [The c]laimant's lack of knowledge that he could delay the filing of his application for benefits is not tantamount to an error or mistake by the Department.

. . . .

This Court has stated, "[a]ny lay person who chooses to represent himself in a legal proceeding must assume the risk that his lack of expertise and legal training may prove to be his undoing." *Daly v. Unemployment [Comp.] Board of [Rev.]*, . . . 631 A.2d 720, 722 ([Pa. Cmwlth.] 1993). [The c]laimant may not have understood the purpose of the remand, or the legal requirements for having his application for benefits backdated to December 28, 2014, but this is not an error of the Department.

The fact that [the c]laimant may have benefitted by filing his application for benefits at a later date, or by withdrawing his initial application and refiling his application, does not constitute an error by the Department.

*Id.* at 1107-08 (citations omitted).

We therefore conclude that the Board did not err in denying Claimant's untimely request to withdraw her application for benefits and to cancel the corresponding benefit year in accordance with Section 65.56 of the Department's Regulations, 34 Pa. Code § 65.56.

## IV. Conclusion

Based on the foregoing discussion, we affirm the Board's order.

_____
CHRISTINE FIZZANO CANNON, Judge

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kathleen DeFrancesco,                    :
                Petitioner         :
                                  :
        v.                       :
                                  :
Unemployment Compensation                :
Board of Review,                         :   No. 1802 C.D. 2019
                Respondent        :

## O R D E R

AND NOW, this 8th day of January, 2021, the November 20, 2019 order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge